## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MICHAEL BROWN,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀C.A. No. 1:23-cv-00547-SRF
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
CITY OF WILMINGTON,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀)

---

Ronald Poliquin, THE POLIQUIN FIRM, LLC, Dover, DE.

⠀⠀⠀⠀Attorney for Plaintiff.

Caitlyn Quinn, John Stant, II, CITY OF WILMINGTON L. DEP'T, Wilmington, DE.

⠀⠀⠀⠀Attorneys for Defendant.

---

## <u>MEMORANDUM OPINION</u>

July 25, 2024
Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE:**

The present case was brought by Plaintiff Michael Brown against the City of Wilmington

(hereinafter "the City") for alleged violations of the Age Discrimination in Employment Act

(hereinafter "ADEA"), 29 U.S.C. § 621 *et seq.*, and the Delaware Discrimination in Employment

Act (hereinafter "DDEA"), 19 *Del. C.* § 710 *et seq.*

Before the court is the City's Motion to Dismiss Plaintiff's First Amended Complaint

(D.I. 12) pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim.

(D.I. 17)[1] For the reasons that follow, the City's motion is **DENIED** as to the ADEA claim and

**GRANTED** as to the DDEA claim.[2]

## I.     BACKGROUND

This action arises from the Wilmington City Council's posting of an opening for the

Chief of Staff position in April of 2022. (D.I. 12 (hereinafter "FAC") at ¶¶ 7–8) City Council

engages in legislative functions on behalf of the City. (*Id.* at ¶ 2) The City Council members

vote on the selection of the Chief of Staff, and a majority vote is required to recommend hiring

the successful applicant. (*Id.* at ¶ 9)

Plaintiff, who had previously served as a council member, applied and interviewed for

the Chief of Staff position. (*Id.* at ¶ 10, 22) Plaintiff was sixty-seven (67) years old at the time.

(*Id.* at ¶ 1) On June 10, 2022, he asked Councilwoman Shané Darby if she had any questions

about his credentials, to which he received the following response by text message: "Morning! I

don't question your qualifications at all. But I am honestly more in supportive [sic] of bringing

---

[1] The briefing submitted for this Motion is found at D.I. 18, D.I. 20, D.I. 21, and D.I. 22.
[2] On June 5, 2023, the parties consented to my jurisdiction as a Magistrate Judge to conduct all
proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and
Federal Rule of Civil Procedure 73. (D.I. 9)

in new and younger people. But it doesn't look like we have that option for this role." (*Id.* at ¶ 11) Plaintiff alleges, upon information and belief, that Darby's comment represented the view of other City Council members. (*Id.* at ¶ 15) A younger applicant was initially selected for the position but later withdrew due to a lack of support. (*See id.* at ¶¶ 10, 16, 18)

Thus, the position was "reposted" in early September of 2022. (*Id.* at ¶ 20) Plaintiff again applied for the position on September 8, 2022. (*Id.* at ¶ 21) But he received a letter on September 18, 2022, stating that he "did not meet the qualifications for the Chief of Staff position." (*Id.* at ¶ 25)

Plaintiff filed a timely Charge of Discrimination with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC") on January 25, 2023. (*Id.* at ¶ 5; *see also* D.I. 12-1) The EEOC issued Plaintiff a Right to Sue Notice on February 28, 2023. (D.I. 12 at ¶ 6; *see also* D.I. 12-2) Plaintiff filed this lawsuit on May 19, 2023. (D.I. 1)

Councilwoman Darby was interviewed about the Chief of Staff selection process by the Wilmington News-Journal in June of 2023. (*See* D.I. 12 at ¶ 30) When asked why she did not select Plaintiff, she was quoted as saying: "I wanted someone new and younger to bring some energy and newness to the council." (*Id.*)

On July 17, 2023, Plaintiff filed the FAC alleging age discrimination and disparate treatment under the ADEA and DDEA. (*See* D.I. 12) The City filed the present Motion to Dismiss on September 15, 2023. (D.I. 17) The motion was fully briefed on October 16, 2023, and is ripe for review. (D.I. 22)

## II.   LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, the court

3

must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring it "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

The City moves to dismiss Plaintiff's ADEA claim because the Chief of Staff position allegedly falls within the policymaker exemption to the ADEA. (D.I. 18 at 9–15) The City also moves to dismiss Plaintiff's DDEA claim because he has not received a Right to Sue Notice from the DDOL. (*Id.* at 15–17)

4

The City filed a collection of Exhibits, labeled as Exhibits A–J, subsequent to the submission of Plaintiff's answering brief. (*See* D.I. 21) The Exhibits were not identified in an accompanying declaration. (*See id.*)

As a preliminary issue, the court will only consider the Exhibits to the City's opening brief that were referenced and relied upon in the FAC.[3] *See Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, [the court] may consider documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." (internal quotations omitted)).

## A.  The ADEA's Policymaker Exemption

The City moves to dismiss the FAC on the basis that Plaintiff is not in a protected category because the Chief of Staff position is exempt from the definition of an "employee" under the ADEA and DDEA. (D.I. 18 at 9–15) Plaintiff argues that the issue is fact-intensive and, therefore, should not be decided at the motion to dismiss stage. (D.I. 20 at 10–14)

Pursuant to the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). But these protections are subject to exception:

> The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or *an appointee on the policymaking level* or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the

---

[3] In the absence of a declaration, the court cannot determine which Exhibits constitute matters of public record, so the court will only consider Exhibit B because the text messages are incorporated in the FAC at ¶ 11, and Exhibit H because the FAC refers to the letter at ¶ 25.

preceding sentence shall not include employees subject to the civil service laws of
a State government, governmental agency, or political subdivision.

29 U.S.C. § 630(f) (emphasis added). In issue is whether the City Council's Chief of Staff is "an

appointee on the policymaking level[,]" thus barring his ADEA claim pursuant to the

policymaker exemption. *Id.*; *see also Freebery v. Coons*, 589 F. Supp. 2d 409, 421 (D. Del.

2008).

The Third Circuit has not addressed how the policymaker exemption is to be applied in

the context of ADEA claims. Other courts in this circuit look to five non-exhaustive factors:

> (1) [W]hether the appointee has discretionary rather then [sic] solely administrative
> powers, (2) whether the appointee serves at the pleasure of the appointing authority,
> (3) whether the appointee has "meaningful input into governmental decision
> making on issues where there is room for principled disagreement on goals or their
> implementation," or, put another way, whether the appointee formulates policy,
> (4) whether the appointee is empowered to act and speak on behalf of a
> policymaker, particularly an elected official, and (5) whether the appointee is
> exempt form [sic] civil service protection, controls other employees, and has some
> technical competence or expertise.

*Conley v. City of Erie*, 521 F. Supp. 2d 448, 455 (W.D. Pa. 2007) (quoting *Costenbader-*

*Jacobson v. Pennsylvania*, 227 F. Supp. 2d 304, 309 (M.D. Pa. 2002)). "Because Title VII and

the ADEA use the same definition of employee, cases discussing who is an 'appointee on the

policymaking level' under both statutes apply . . . ." *Costenbader-Jacobson*, 227 F. Supp. 2d at

309 n.2. Moreover, the policymaker exemption is narrowly construed. *Id.* at 309. The DDEA is

analyzed under the same standard. *See, e.g., Rodriguez v. Cap. Vision Servs., LLC*, 2023 WL

2018904, at *5 (D. Del. Feb. 15, 2023).

"Because the unique characteristics of a job will often influence this determination, an

individual's status as a policy-making employee frequently poses a fact question. However,

when the duties and responsibilities of a particular position are clearly defined by law and

regulations, a court may resolve this issue without the aid of a finder of fact." *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 972 (7th Cir. 2001) (citations omitted).

The City argues that the policymaker exemption applies to the City Council's Chief of Staff because he or she "directly supervises all Council staff, serves as the chief advisor to City Council, and helps direct Council initiatives and the legislative agenda." (D.I. 18 at 10)  It claims that the position meets all five factors outlined in *Costenbader-Jacobson.*  (*Id.* at 11–15)

Plaintiff argues that whether the Chief of Staff falls under the policymaker exemption is a question of fact that cannot be decided on a motion to dismiss. (D.I. 20 at 10–11)  He relies upon *Elrod v. Burns*, 427 U.S. 374 (1976), a political patronage case, and its Third Circuit progeny in support of his argument that application of the policymaker requires fact-intensive analysis. (D.I. 20 at 10–11); *e.g.*, *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 396 (3d Cir. 1998) ("[T]his court acknowledged that '[i]t is not always easy to determine whether affiliation is a legitimate factor to be considered for a particular job,' and that each decision is 'fact specific for that case.'" (alterations in original) (quoting *Zold v. Twp. of Mantua*, 935 F.2d 633, 635 (3d Cir. 1991))); *Rosenthal v. Rizzo*, 555 F.2d 390, 392 (3d Cir. 1977) ("[T]wo of the defendants admitted Rosenthal's status as a non-policymaker, while as to the other two defendants, Rosenthal's status represented a genuine issue of material fact."); *see also Watts v. Bibb Cnty.*, 2010 WL 3937397, at *7 (M.D. Ga. Sept. 30, 2010) (describing this inquiry as "highly fact dependant [sic]" before ultimately finding at the summary judgment stage that the policymaker exemption applied).

The issue of whether the Chief of Staff is covered by the ADEA's policymaker exemption is best left for consideration at the summary judgment stage or at trial when there is a full factual record.  Moreover, although the City argues that the Third Circuit treats ADEA and

political patronages cases "differently[,]" it does not explain the difference.  (*See* D.I. 22 at 4)

Furthermore, the City's case authorities from district courts within the Third Circuit, *Conley* and

*Costenbader-Jacobson*, were both decided at the summary judgment stage.  (*See* D.I. 20 at 12)

Whether the Chief of Staff position is "an appointee at the policymaking level" is a

mixed question of law and fact that is not appropriate to resolve at this stage of the case.

Therefore, the City's motion to dismiss Plaintiff's ADEA claim is **DENIED**.

## B. DDEA Exhaustion of Administrative Remedies

To bring a DDEA claim, a plaintiff must "first file a charge of discrimination within 300

days of the alleged unlawful employment practice" with the DDOL.  19 *Del. C.* § 712(c)(1)a.

After it investigates, DDOL "shall issue a determination of either 'reasonable cause' or 'no

reasonable cause' to believe that a violation has occurred or is occurring. . . . All cases resulting

in a 'no cause' determination will receive a corresponding Delaware Right to Sue Notice."

§ 712(c)(3).  A Right to Sue Notice may also be issued after preliminary findings are made,

which takes place within sixty (60) days of the charge being filed.   § 712(c)(2), (c)(5).  The

issuance of a Right to Sue Notice "refers to a final acknowledgement of the charging party's

exhaustion of [] administrative remedies."  19 *Del. C.* § 710(4).  A claim should be dismissed if

administrative remedies have not been exhausted.  *E.g.*, *Robinson v. Dalton*, 107 F.3d 1018,

1020 (3d Cir. 1997).

The City avers that Plaintiff did not attach a Delaware Right to Sue Notice to his original

complaint or the FAC.  (D.I. 18 at 15–17)  Thus, he has not exhausted administrative remedies,

and his DDEA claim should be dismissed.[4]  (*Id.*)  Plaintiff does not dispute that he lacks a Right

---

[4] Plaintiff has received a Right to Sue Notice from the EEOC.  (D.I. 12-2)

to Sue Notice, though he has requested one from DDOL. (D.I. 20 at 4) He makes no other argument against dismissal. (*See id.*)

Taking the allegations in the FAC as true, Plaintiff avers that the allegedly discriminatory conduct occurred in June through September of 2022, and he filed his Charge of Discrimination with the DDOL on January 25, 2023. (*E.g.*, D.I. 12 at ¶¶ 5, 11, 21, 25) This was within the 300-day limit imposed by § 712(c)(1)a. Therefore, the City's motion to dismiss the DDEA charge is **GRANTED**. Plaintiff may move to amend to include his DDEA claim if/when he receives a Right to Sue Notice from DDOL.

## IV.   CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss is **DENIED** as to the ADEA claim and **GRANTED** as to the DDEA claim. An Order consistent with this Opinion shall issue.